# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Frank M. Peck,

      Petitioner

v.

Brian Williams, et. al.,

      Respondents

Case No.:  2:17-cv-01620-JAD-VCF

**Order Granting in Part and
Denying in Part Motion to Dismiss and
Denying Motion to Strike**

[ECF Nos. 104, 126]

      Counseled Nevada inmate Frank M. Peck petitions for a writ of habeas corpus under 28 U.S.C. § 2254, arguing that his constitutional rights were violated by pre-trial delays, his self-representation at trial, the admission of voice-identification evidence and false evidence, and ineffective assistance of appellate counsel related to the voice-identification evidence.[1] Respondents move to dismiss four of Peck's claims as untimely, unexhausted, or procedurally defaulted.  I find that ground 5 is untimely, so I grant the motion to dismiss it.  I also find that grounds 1 and 2 are timely and that ground 1 is exhausted.  But I defer to the merits phase a decision on whether ground 3 is procedurally defaulted and direct the respondents to file an answer by May 5, 2023.

## I.    Background

      In 2006, a grand jury indicted Peck for a 1994 sexual assault.[2]  A jury convicted Peck in 2009,[3] and he was sentenced to life with the possibility of parole after five years, consecutive to

---

[1] ECF No. 97.

[2] Exh. 6.  Exhibits referenced in this order are exhibits to respondents' motion to dismiss, ECF No. 104, and are found at ECF Nos. 105, 107–15.

[3] Exh. 82.

his sentence in a 1996 case.[4]  The Nevada Supreme Court affirmed Peck's judgment of conviction in May 2010.[5]

In June 2009, before the state district court entered the judgment or Peck filed a notice of direct appeal, Peck filed a *pro se* state postconviction habeas corpus petition.[6]  The parties stipulated to stay those proceedings pending resolution of Peck's direct appeal, and the district court adopted the order.[7]  After the direct appeal concluded, the district court appointed counsel to represent Peck in his postconviction proceedings,[8] who filed a notice of no supplemental petition.[9]  Peck opposed the notice *pro se*.[10]

In September 2012, Peck filed a *pro se* state postconviction petition directly with the Nevada Supreme Court.[11]  It was denied because for lack of exhaustion.[12]  Peck then filed several *pro se* supplemental postconviction petitions.[13]  The state moved to dismiss the 2009 petition as premature and the subsequent petitions or supplements as untimely.[14]  The state district court granted the motion to dismiss without addressing any of the issues in the 2009 petition or addressing the argument that it was premature.[15]  On appeal, the Nevada Supreme

---

[4] Exh. 115.

[5] Exh. 150.

[6] Exh. 95.

[7] Exh. 129.

[8] Exh. 159.

[9] Exh. 182.

[10] Exh. 187.

[11] Exh. 183.

[12] Exh. 196.

[13] Exhs. 186, 211, 212, 221, 233, 236, 237, 246, 251.

[14] Exh. 257.

[15] *Id*.

1  Court reversed and remanded, directing the state district court to consider the issues raised in the

2  2009 petition and whether Peck could supplement the petition.[16]

3       On remand in January 2015, Peck filed a first-amended postconviction petition, a

4  separate memorandum of points and authorities, and a motion for leave to amend.[17]  The state

5  district court ordered Peck to file one amended petition to take the place of all prior petitions,

6  amended petitions, and supplemental petitions.[18]  Peck then filed an amended petition and a

7  separate memorandum of points and authorities in June 2015.[19]  The state district court

8  dismissed the petition in April 2016.[20]  On appeal, the Nevada Supreme Court construed ten

9  claims from Peck's opening brief and affirmed the denial of the petition without briefing from

10  the state.[21]

11       Peck dispatched his federal habeas corpus petition on or about June 5, 2017.[22]  Because I

12  found it impossible to determine what he intended to raise in certain claims, I ordered Peck to

13  file an amended petition reorganizing and restating his claims.[23]  He filed a first-amended

14  petition in June 2018 and a second-amended petition in April 2019.[24]  I appointed the Federal

15

16

17

---

18  [16] Exhs. 261, 266.

19  [17] Exhs. 268, 269, 270.

   [18] Exh. 281 at 7.

20  [19] Exhs. 286, 287.

21  [20] Exh. 430.

   [21] Exh. 470.

22  [22] ECF No. 1-1.

23  [23] ECF No. 18.

   [24] ECF Nos. 19-1, 51.

Public Defender to represent Peck in May 2019.[25]  He filed the counseled, third-amended petition in January 2022.[26]

The third-amended petition sets forth six claims for relief:

1.    Pre-arrest and pre-trial delay violated Peck's Fifth and Sixth Amendment rights to a speedy trial and due process;

2.    Peck did not make a knowing, intelligent, and voluntary decision to represent himself, resulting in a violation of his Sixth Amendment right to counsel;

3.    The trial court violated Peck's due process rights when it denied him adequate time to prepare his defense;

4.    The voice identification offered into evidence at trial was unduly suggestive and violated Peck's due process rights;

5.    Peck's appellate counsel was ineffective for failing to argue on appeal that the prosecution engaged in misconduct by not disclosing the voice identification prior to trial in violation of his Sixth Amendment rights; and

6.    The State's knowing use of false evidence to convict Peck violated his due process rights.[27]

Respondents move to dismiss grounds 1, 2, and 5 of the third-amended petition as untimely and unexhausted.[28]  Peck opposed that motion, the respondents replied, and Peck moved to strike the reply, arguing that it impermissibly raises new arguments.[29]

---

[25] ECF No. 50.

[26] ECF No. 97.

[27] *Id*. at 11–31.

[28] ECF No. 104.

[29] ECF Nos. 120, 125, 126.

## II.    Legal Standards & Analysis

### A.    Relation Back

A new claim in an amended petition that is filed after the expiration of the Antiterrorism and Effective Death Penalty Act's (AEDPA's) one-year limitation period will be timely only if the new claim relates back to a claim in a timely filed pleading under Rule 15(c) of the Federal Rules of Civil Procedure, on the basis that the claim arises out of "the same conduct, transaction or occurrence" as a claim in the timely pleading.[30] Habeas claims in an amended petition do not arise out of "the same conduct, transaction or occurrence" as claims in the original petition merely because they challenge the same trial, conviction, or sentence.[31] The new claims relate back "only when" they "arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes."[32] The reviewing court thus looks to "the existence of a common 'core of operative facts' uniting the original and newly asserted claims," and a claim that merely adds "a new legal theory tied to the same operative facts as those initially alleged" will relate back and be timely.[33]

The parties do not dispute that Peck's original petition and first-amended petition were timely filed and that the AEDPA statute of limitations expired in November 2017, so Peck's claims in the January 2022 third-amended petition must relate back to the original or first-

---

[30] *Mayle v. Felix*, 545 U.S. 644 (2005).

[31] *Id*. at 655–64.

[32] *Id*. at 657.

[33] *Id*. at 659 and n.5; *see also Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1297 (9th Cir. 2013).

1   amended petition in order to be timely.[34]   Respondents insist that grounds 1, 2, and 5 don't meet

2   this requirement and therefore must be dismissed.[35]

3                   **1.      *Ground 1 relates back to a claim in Peck's original pro se petition.***

4               In the third-amended petition, Peck asserts that delays in arresting him and bringing him

5   to trial violated his constitutional rights.[36]   In particular, he points to years of delay between

6   obtaining a DNA sample from the rape victim and matching it to Peck.   He contends that

7   methods for testing smaller DNA samples became available in 1997.[37]   He argues the 15-year

8   gap between the crime and the trial prevented him from presenting alibi witnesses and

9   documentation of his whereabouts (such as airline tickets) that would have demonstrated that he

10  was not in the Reno area at the time of the crime.   He states that his sister and his brother had

11  pieced together a timeline that would have shown that he was in California and Las Vegas

12  around the time in question.

13              In his original *pro se* petition, Peck asserted that the 15-year delay in trying him violated

14  his constitutional rights.[38]   He highlighted the delay in testing the DNA samples, including

15  several years between when police obtained a sample from Peck and when they tested it and

16  compared it to the database.   He argues that the method to test the DNA was available in 1996.

17  He argues that the death of a Metro officer John Sullivan, who would have testified that he was

18  in the Las Vegas area at the time of the crime, prejudiced his defense.   He also contends that the

19  delay prevented him from being able to obtain proof of air travel.

20  

---

21  [34] *See* ECF Nos. 104, 120.

    [35] ECF No. 104 at 8–9.

22  [36] ECF No. 97 at 11–17.

23  [37] A DNA profile of Peck was completed in April 2003.   *Id*. at 12.

    [38] ECF No. 1-1 at 33.

1    I find that the current ground 1 relies sufficiently on the same core facts that are set forth

2  in the original petition and does not depend upon events separate in "both time and type" from

3  the originally raised events.  So ground 1 relates back and is timely.

4            *2.        Ground 2 relates back to claims in Peck's pro se first-amended petition.*

5    Peck now claims that he did not knowingly, intelligently, and voluntarily decide to

6  represent himself at trial in violation of his Sixth Amendment right to counsel.[39]  Peck argues

7  that his lawyer, Bruce Lindsay, threatened him and had admitted that he viewed the case

8  negatively because he had been stabbed by a client during trial recently and was having health

9  issues.  Peck argues that he informed the court that he didn't want to represent himself; he just

10  wanted new counsel due to a conflict.  He claims that he was denied the opportunity to

11  effectively represent himself, including that the court refused him additional time to obtain and

12  review discovery, particularly the DNA evidence.

13    In his first-amended petition, Peck argued that he did not knowingly, voluntarily, and

14  intelligently waive his right to counsel because of threats by Lindsay, who had recently been

15  stabbed by a client.[40]  He insisted that the court constructively denied him the ability to present a

16  defense by denying him meaningful access to the telephone, current research materials,

17  discovery, and the time to prepare a defense.

18    I view the core of ground 2 to be that Peck did not knowingly, intelligently, and

19  voluntarily elect to represent himself, in part due to threats by his lawyer, and that he was denied

20  the opportunity to effectively represent himself.  This core of common facts appears in both the

21  first-amended petition and the operative petition.  Ground 2, therefore, relates back and is timely.

22

---

23  [39] ECF No. 97 at 17–20.

[40] ECF No. 19-1 at 38.

### 3.     *Ground 5 is untimely.*

Peck contends that his appellate counsel was ineffective for failing to raise a claim that the prosecution engaged in misconduct by not disclosing prior to trial that the victim had identified Peck's voice.[41]   Days before the trial, at the *Faretta* hearing, Lindsay had told the court that "the victim cannot identify my client as the perpetrator."[42]   At trial, the victim testified that she had been in court, at the direction of the district attorney's office, a couple of weeks prior to trial.  She told the victim assistant who accompanied her that she recognized Peck's voice.  At the time that Peck elected to represent himself, he and Lindsay were of the understanding that the only evidence against him was the DNA evidence.  Peck alleges that, while appellate counsel challenged the voice-identification evidence as unduly suggestive, she did not raise the claim of lack of notice to the defense.

Respondents assert that Peck did not raise this claim in either his original or first-amended petitions.[43]   Peck essentially agrees, but he urges that he incorporated a similar claim into his original petition because he attached the Nevada Supreme Court order affirming the denial of his state postconviction petition.[44]   In his original petition, Peck raised as ground 4 the claim that the voice-identification evidence was unduly suggestive in violation of his due-process and fair-trial rights.[45]   He attached the order affirming the denial of his state postconviction petition in which the court rejected the claim that appellate counsel should have argued that the

---

[41] ECF No. 97 at 26–29.

[42] *Id.* at 26.

[43] ECF No. 104 at 9.

[44] ECF No. 102 at 9.

[45] ECF No. 1-1 at 16.

State committed misconduct by eliciting a suggestive voice identification.[46]  But these claims

from the original federal petition and the state postconviction petition are about the suggestive

nature of the voice identification.  Those relate to ground 4 of this federal petition, which argues

that the admission of the unduly suggestive voice identification violated Peck's constitutional

rights.  The claim in ground 5 focuses on the alleged failure by appellate counsel to raise the

claim that the State committed misconduct by failing to disclose that it was going to introduce

voice-identification evidence.  This is a separate claim.  I find that ground 5 does not relate to a

claim in a timely filed petition, so I dismiss it as untimely.

### B.    Exhaustion & Procedural Default

Because a habeas petitioner must give the state courts a fair opportunity to act on each of

his claims before he presents them in a federal habeas petition, the federal court will not consider

a state prisoner's petition for habeas relief until he has properly exhausted his available state

remedies for all claims raised.[47]  A claim remains unexhausted until the petitioner has given the

highest available state court the opportunity to consider the claim through direct appeal or state

collateral-review proceedings.[48]  To properly exhaust state remedies on each claim, the habeas

petitioner must "present the state courts with the same claim he urges upon the federal court."[49]

The federal constitutional implications of a claim, not just issues of state law, must have been

---

[46] *Id*. at 37–43.

[47] *Rose v. Lundy*, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b).

[48] *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999); *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).

[49] *Picard v. Connor*, 404 U.S. 270, 276 (1971).

raised in the state court to achieve exhaustion.[50]  A claim is not exhausted unless the petitioner

has presented to the state court the same operative facts and legal theory upon which his federal

habeas claim is based.[51]

       "Procedural default" refers to the situation in which a petitioner in fact presented a claim

to the state courts, but the state courts disposed of the claim on procedural grounds instead of on

its merits.[52]  A federal court will not review a claim for habeas corpus relief if the decision of the

state court regarding that claim rested on a state law ground that is independent of the federal

question and adequate to support the judgment.[53]  The procedural default doctrine ensures that

the state's interest in correcting its own mistakes is respected in all federal habeas cases.[54]

       As the Supreme Court explained in *Coleman v. Thompson*, a procedural default prevents

the federal court from reviewing a habeas claim unless the petitioner can show good cause plus

actual prejudice:

> In all cases in which a state prisoner has defaulted his federal
> claims in state court pursuant to an independent and adequate state
> procedural rule, federal habeas review of the claims is barred
> unless the prisoner can demonstrate cause for the default and actual
> prejudice as a result of the alleged violation of federal law or
> demonstrate that failure to consider the claims will result in a
> fundamental miscarriage of justice.[55]

---

[50] *Woods v. Sinclair*, 764 F.3d 1109, 1129 (9th Cir. 2014); *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005) (fair presentation requires both the operative facts and federal legal theory upon which a claim is based).

[51] *Bland v. California Dept. Of Corrections*, 20 F.3d 1469, 1473 (9th Cir. 1994).

[52] *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991).

[53] *Id*.

[54] *See Koerner v. Grigas*, 328 F.3d 1039, 1046 (9th Cir. 2003).

[55] *Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

1  To demonstrate cause for a procedural default, the petitioner must be able to "show that some

2  objective factor external to the defense impeded" his efforts to comply with the state procedural

3  rule.[56]  That external impediment must have prevented the petitioner from raising the claim.[57]

4        Respondents argue that grounds 1, 2, and 5 are unexhausted or procedurally defaulted.[58]

5  Because I am dismissing ground 5 as untimely, I consider the exhaustion and default arguments

6  with respect to grounds 1 and 3 only.

7              ***1.     Ground 1 is exhausted.***

8        Comparing Peck's appellate brief with the third-amended petition, I find that he fairly

9  presented ground 1 to the Nevada Supreme Court.[59]  In both claims, Peck complains that delays

10  violated his Sixth Amendment speedy trial rights.  He points out that his DNA was collected

11  sometime around 1998 in an unrelated case, yet nothing happened with this case for several

12  years.  He states that the statute of limitations when this crime occurred in 1994 was four years.

13  He argues that the 15-year delay prevented him from obtaining documentation such as airline

14  and banking records in order to prove his whereabouts.  Ground 1 of the third-amended petition

15  is thus exhausted.

16

17              ***2.     A determination on whether ground 3 is procedurally defaulted will be
                          deferred.***

18        In ground 3, Peck urges that the trial court violated his due process rights by denying him

19  adequate time to prepare his defense.[60]  He argues that, when he moved to represent himself, he

20

---

21  [56] *Murray*, 477 U.S. at 488 (emphasis added).

22  [57] *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991).
    [58] ECF No. 104 at 10–11.

23  [59] *Compare* Exh. 139 at 31–34 with ECF No. 97 at 11–17; *see also* Exh. 150 at 2–7.
    [60] ECF No. 97 at 20–23.

1   asked the court for additional discovery about the DNA evidence and for "reasonable

2   resources."[61]  The court granted the motion for self-representation on May 1, 2009, and

3   appointed Lindsay as stand-by counsel.  Two days later, Peck filed a motion to continue trial.

4   The court denied the motion, and the trial began the next day.

5        Peck did not present this claim when he appealed his convictions to the Nevada Supreme

6   Court.[62]  He points out that he raised this claim in his state postconviction petition and during his

7   appeal of the denial of that petition to the Nevada Supreme Court.[63]  Peck acknowledges that the

8   state appellate court refused to consider the claim because it should have been raised on direct

9   appeal and Peck failed to show good cause to excuse the procedural bar.[64]

10       In rejecting Peck's claim, the Nevada Supreme Court explained:

11            Peck next argues that . . . the trial court deprived him of sufficient
             time to prepare his defense, impaired his ability to participate in his
12           own defense, and should have appointed counsel. Peck has failed
             to justify excusing the procedural bar because he never moved for
13           a continuance when proceeding *pro se* and stated his intent to
             proceed *pro se* when the trial court considered his motion for
14           substitute counsel.[65]

15  Peck insists that this is factually incorrect and that he moved twice for a continuance, which the

16  state district court denied in both instances.  He also argues that at an in-chambers conference the

17  day before trial he again requested a continuance.  He asserts that the state-court record

18  demonstrates numerous attempts to secure more time to prepare.  In response to these factual

19  allegations and Peck's insistence that he can overcome the procedural default, respondents ask

20

21  [61] *Id*.

    [62] *See* Exhs. 139, 150.
22
    [63] ECF No. 120 at 12-15, Exh. 454 at 37–41.

23  [64] ECF No. 120 at 13–15.

    [65] Exh. 470 at 6–7.

1 me to defer my ruling on ground 3.  Respondents disagree with Peck's representation of the

2 state-court record, but they argue that the inquiry is closely intertwined with the merits of the

3 claim.  I agree that a deferral best serves judicial efficiency and economy.  I therefore defer my

4 decision regarding whether Peck can demonstrate good cause and actual prejudice to excuse the

5 procedural default of ground 3 to the merits disposition.  The parties may further address

6 procedural default in the answer to the remaining claims in the petition and the reply.

7          **C.      Peck's Motion to Strike the Reply [ECF No. 126]**

8          In the context of their differing views of ground 3, Peck moves to strike respondents'

9 reply in support of the motion to dismiss, arguing that it impermissibly raises new arguments.  I

10 note that Peck's opposition to the motion to dismiss offered a strained exhaustion argument

11 regarding ground 3 that essentially conflated exhaustion and procedural default.  The reply did

12 not overreach in its response.  So I deny the motion to strike, and I have considered all arguments

13 by both parties on the motion to dismiss.

14 **III.    Conclusion**

15          IT IS THEREFORE ORDERED that respondents' motion to dismiss **[ECF No. 104] is**

16 **GRANTED in part and denied in part:**

17          • Grounds 1 and 2 are deemed timely.

18          • Ground 5 is DISMISSED as untimely.

19          • Ground 1 is deemed EXHAUSTED.

20          • A decision on whether Ground 3 is procedurally defaulted is deferred.

21          IT IS FURTHER ORDERED that petitioner's motion to strike **[ECF No. 126] is**

22 **DENIED**.

23

IT IS FURTHER ORDERED that **respondents have until May 5, 2023, to file an answer** to the remaining claims in the third-amended petition.  Peck will have 30 days from the date that the answer is filed to file a reply in support of his petition.

_____
U.S. District Judge Jennifer A. Dorsey
March 6, 2023